**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **21-01299-hb**

**ORDER**

The relief set forth on the following pages, for a total of 7 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**09/01/2021**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 09/01/2021

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 21-01299-HB |
| Charles Edward Leonard, Jr., | Chapter 7 |
| Debtor(s). | **ORDER DENYING DEBTOR'S MOTION TO DISMISS** |

**THIS MATTER** is before the Court for consideration of Debtor Charles Edward Leonard, Jr.'s pleading titled *Motion and Intent to Voluntarily Withdraw and/or Dismiss Chapter 7 Bankruptcy*.[1] John K. Fort, Chapter 7 Trustee,[2] and the United States Trustee objected to the Motion.[3] Fort, Linda K. Barr, counsel for the UST, and Debtor's counsel, William Joseph Virgil Barr ("V. Barr") attended the hearing on August 24, 2021, where Leonard testified.

### FACTS AND PROCEDURAL HISTORY

1. Leonard began searching for bankruptcy counsel at the end of 2020 and initially connected with attorney Nick Wajda of Recovery Law Group, APC. The evidence indicates that at or around that time, Leonard's financial situation began to deteriorate significantly due in part to a business Leonard had started that was negatively affected by the COVID-19 pandemic.

2. In December 2020, Leonard and his wife moved into their current home at 2220 S. Blackstock Rd., Landrum, SC 29356, which is situated on 20 acres ("Blackstock Property"). The Blackstock Property was purchased in 2018 and deeded in the name of Leonard's wife. At the time of purchase, it consisted of 20 acres without any improvements. It was acquired with an estimated

---

[1] ECF No. 13, filed July 7, 2021. The Motion was self-scheduled pursuant to SC LBR 9013-4 but was not served on all parties in interest as required by that rule. *See* Fed. R. Bankr. P. 1017(f) and 9013. As a one-time courtesy to Debtor's counsel, the Court issued a hearing notice and gave notice to relevant parties. ECF Nos. 18-19.
[2] ECF No. 14, filed July 7, 2021. The Objection is linked to a substantively identical Motion of the Debtor at ECF No. 11.
[3] ECF No. 22, filed Aug. 10, 2021.

down payment of $25,000.00 from Leonard and his wife's joint account and a loan from AgSouth Credit Union ("AgSouth") in the amount of $240,000.00 secured by a mortgage on the 20 acres. Leonard's testimony indicated that prior to filing this bankruptcy case, AgSouth may have released its lien on one acre for Leonard and his wife to build a house, with the loan terms and lien otherwise remaining unaffected. He testified that the acre on which the house is situated may not be encumbered by a mortgage.

      3.      Around March or April 2021, Leonard connected with his present counsel, V. Barr.

      4.      On May 11, 2021, Leonard filed a voluntary petition for Chapter 7 relief, schedules, and statements, with V. Barr listed as counsel.

      5.      In response to the question on the Statement of Financial Affairs ("SOFA") that asks, "Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?" Leonard responded he paid $2,350.00 to Recovery Law Group, APC in "2020-2021." The Official Form B2030, Disclosure of Attorney Compensation, states Leonard paid $2,012.00 in attorney's fees and $338.00 for the filing fee, and is signed by V. Barr with no law firm listed.

      6.      Leonard listed on his Schedule A/B the Blackstock Property, including the 20 acres and improvements, with a total value of $250,000.00, but testified that the total value is approximately $500,000.00.

      7.      Leonard testified that all the property and improvements on the Blackstock Property are solely his wife's property, only his wife's name is on the deed and mortgage, and his Schedule A/B states "[t]he residence is the non-filing spouse's sole and separate property." However, that Schedule still indicates half the value that he listed ($125,000.00) is his.

8.  Leonard disclosed on his SOFA he and his wife sold their prior residence in July 2019 and a portion of the $135,000.00 in net proceeds—half of which he was entitled to as joint title holder—was used to fund the construction of the home on the Blackstock Property.

9.  Leonard's SOFA indicates he sold a vacant lot in March 2021. He disclosed this sale to Wajda prior to filing bankruptcy. At some point prior to this sale, Leonard had prepared bankruptcy schedules and statements with Wajda's assistance. These previously drafted documents were updated with some information regarding this sale before they were filed with the Court.

10. The SOFA states the buyer of the vacant lot is "unknown," Leonard received proceeds of $32,000.00, and paid $950.00 of the proceeds to a creditor. However, Leonard responded "No" to part 3, question 6 on the SOFA that asks, "During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?" Leonard explained this portion of his SOFA was completed with Wajda before the sale of the vacant lot and Leonard agreed his filed schedules and statements may not reflect all the changes that occurred between the drafting of those documents and the filing of this case.

11. Leonard asserted he has disclosed and provided all bank statements and accountings requested by the Chapter 7 Trustee and UST, but then conceded he did not list or provide information requested regarding his PayPal account, which he uses as a third party exchange for his business.

12. Leonard's Schedule E/F lists nonpriority unsecured debts consisting of credit cards, charge accounts, unsecured business loans, and unsecured deficiencies remaining after two creditors repossessed their recreational vehicle collateral, totaling $206,517.00.[4]

---

[4] This amount may decrease as the repossessed collateral is liquidated, but it appears the amount will exceed $100,000.00.

3

13. On June 23, 2021, the Chapter 7 Trustee issued a Notice to File Claims, indicating potential assets available for distribution to creditors.

14. Leonard's Motion followed on July 7, 2021. He states his desire to exit Chapter 7 and "to work directly with his creditors to resolve his financial issues." At the hearing, Leonard reiterated this desire and indicated vaguely that his financial condition may improve because his employment prospects have improved.

### APPLICABLE LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and the Court may enter a final order. The Chapter 7 trustee must take steps to discharge his duty to: "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest"; "be accountable for all property received"; "investigate the financial affairs of the debtor"; "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper"; and "if advisable, oppose the discharge of the debtor[.]" 11 U.S.C. § 704(a). Leonard asks instead that the Court dismiss the case.

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a). "Courts have routinely held that this provision applies to a debtor's motion to dismiss a voluntarily-filed petition." *Cilwa v. Fort*, C/A No. 7:17-CV-00450-TMC-JDA, 2018 WL

4

1801607, at *3 (D.S.C. Jan. 26, 2018) (citing *In re Smith*, 507 F.3d 64, 72 (2d Cir. 2007) (listing cases)).

> While a debtor is free to file for bankruptcy protection, he does not enjoy the same discretion to withdraw his case once it has been commenced. The debtors must make a showing of cause to dismiss their voluntary case. "Unlike a Chapter 13 bankruptcy case, where the debtor has an absolute right to dismissal, a debtor has no corresponding right to dismiss a Chapter 7 petition." ... "[A]dequate cause to dismiss does not necessarily exist upon a showing by the debtor of his ability to pay debts." The most important consideration is the best interests of creditors.

*In re Wood*, C/A No. 16-06515-DD, 2017 WL 1475973, at *2 (Bankr. D.S.C. Apr. 21, 2017) (quoting *In re Kirven*, 188 B.R. 15, 16 (Bankr. D.S.C. 1994)).

"To voluntarily dismiss a case, a debtor must make a showing of cause and demonstrate why a dismissal is justified. A Chapter 7 debtor has no absolute right to dismissal of his or her case, and the motion to dismiss should be denied if the dismissal would result in prejudice to the creditors." *Id.* (alteration and quotation marks omitted) (citing *In re Thrower*, C/A No. 14-30265, 2014 WL 1873399, at *3 (Bankr. W.D.N.C. May 8, 2014)). In determining whether there is sufficient cause to justify dismissal, Courts have considered the following factors: "(1) whether dismissal is in the best interest of the debtor; (2) whether dismissal is in the best interest of the creditors; (3) whether dismissal would result in an abuse or manipulation of the system; and (4) whether dismissal is justified by compelling equitable principles." *Id.* (quoting *In re Hopper*, 404 B.R. 302, 308 (Bankr. N.D. Ill. 2009)). In cases where the Court has granted a Chapter 7 debtor's motion to dismiss, there typically has been a mistake of fact combined with another element justifying dismissal. *Id.* at *3 (citing *In re Herrera*, 554 B.R. 262 (Bankr. D.N.M. 2016) (granting a debtor's motion to dismiss his Chapter 7 case because, in part, the debtor had "significant cognitive disabilities, which prevented him from understanding the nature and effect of filing the bankruptcy case" and received poor advice from friends, who convinced him to file the bankruptcy case); *In re Heatley*, 51 B.R. 518 (Bankr. E.D. Pa. 1985) (allowing the debtor to dismiss her

5

Chapter 7 case because her income increased post-petition to allow her to repay her creditors outside of bankruptcy, legislation passed post-petition that would likely save her home from foreclosure and would have prevented her from filing for bankruptcy if enacted pre-petition, and her creditors would not be significantly prejudiced by dismissal)).

## CONCLUSION

In support of his Motion, Leonard merely indicates his desire to deal with his creditors and resolve his debts outside of bankruptcy, with no real plan. Meanwhile, the Chapter 7 Trustee has discovered potential assets that can be liquidated for the benefit of creditors. The applicable factors weigh against dismissal. Dismissal may not be in Leonard's best interests considering his liabilities would remain, it is assuredly not in the best interest of creditors since it appears assets may be available for liquidation to pay claims, and an independent trustee should investigate the facts in the record. Leonard's filings indicate a lack of thoroughness and accuracy, and dismissal was requested only after he realized this process may be more complicated than anticipated and the Chapter 7 Trustee intends to pursue and liquidate assets to pay creditors. Dismissal to avoid those actions may result in an abuse or manipulation of the system. Further, the record does not indicate any equitable considerations that justify dismissal. The evidence does not show, and counsel for Leonard did not assert, that there has been a mistake of fact or diminished capacity of the debtor preventing him from understanding the nature of the bankruptcy process. Further, there is insufficient evidence of any significant and unanticipated post-petition change in Leonard's financial circumstances or prospects. Based on the foregoing, Leonard failed to demonstrate sufficient cause to justify dismissal over the objections of the Chapter 7 Trustee and the UST.

**IT IS, THEREFORE, ORDERED** that Debtor Charles Edward Leonard, Jr.'s *Motion and Intent to Voluntarily Withdraw and/or Dismiss Chapter 7 Bankruptcy* is **DENIED**.